**COX et al. v. CAMPBELL et al.**

No. 4356.

Court of Civil Appeals of Texas. Amarillo.

Feb. 26, 1935.

Rehearing Denied April 1, 1935.

W. H. Sanford and Conan Cantwell, both of Longview, for appellants.

Greenwood, Moody & Robertson, of Austin, for appellees Fannie B. Campbell and A. M. Barton.

Bibb & Bibb, of Marshal (T. D. Gresham and R. S. Shapard, both of Dallas, of counsel), for appellees Gregg Oil Co. and Texas & Pacific Ry. Co.

MARTIN, Justice.

Appellants sued appellees in trespass to try title for a narrow strip of land included within the boundaries of the Texas & Pacific Railway Company right of way in Gregg county, upon which an oil well was owned by one of the appellees.

Judgment was for appellees.

In 1898 T. M. Campbell conveyed to J. R. Castleberry a tract of land, the field notes of which furnish the basis for the present controversy, and are as follows:

"Beginning at a stake on the North boundary of the Texas & Pacific Railway right of way;

"Thence North 411½ varas to a stake from which a black jack bears N. 45° E. 5 varas;

"Thence East 1325 varas a stake from which a post oak bears S. 63 feet, W. 2 varas, a sweet gum bears S. 60° E. 2½ varas;

"Thence South 511½ varas a stake on the north boundary line of the Texas and Pacific Railway right of way from which a pine bears N. 25° W. 9 varas;

"Thence with said Texas & Pacific Railway right of way to the place of beginning, containing 108 acres of land, more or less."

The legal issue in this case is correctly and clearly stated by appellants in the following language:

"The sole issue in this case is whether this description carried to the center line of the railway right of way or whether it stopped in the North boundary line of the Railway right of way and left a strip of approximately 21.6 varas wide and approximately 1130 varas long still owned by T. M. Campbell. The defendants together own all of the title

in this strip, if any, that was left in T. M. Campbell after this deed, and the plaintiffs own all the title, if any, that Castleberry acquired by virtue of this deed. The defendants contend that the deed carried only to the North line of the railway right of way, while the plaintiffs contend that the deed carried to the center line of the railway.

"The plaintiffs base their contention on the rule that a conveyance of land bounded on a railroad, stream, highway, or other easement, carries with it the fee to the center of such railroad, highway, stream or easement."

T. M. Campbell in 1887 acquired two tracts of land from the Carter estate lying adjacent and on both sides of the right of way of the Texas & Pacific Railway Company, described by field notes as follows:

"Tract No. One:

"Beginning at W. J. Rodden's N. W. corner;

"Thence South at 49 vrs. a stake dogwood brs. S. 66 E. 6 vrs;

"Thence West at 577 vrs. a stake a post oak brs. N. 44 E. 19.4 vrs.;

"Thence North at 511½ vrs. a stake in center of T. & P. R. R.;

"Thence East with said R. R. at 786 vrs. a stake in same;

"Thence South at 467 vrs. the North line of said W. J. Rodden's tract a white oak for corner:

"Thence West with said line at 208¾ vrs. the place of beginning, containing 68 acres of land, more or less.

"Tract No. Two:

"Beginning at the intersection of the T. & P. R. R. with the line between Carter and Baughman;

"Thence North with said line at 511½ vrs. the N. W. corner of the Carter tract a black jack brs. N. 1 E. 5 vrs. a pine S. 60 W. 8.8 vrs.;

"Thence East with South line of Castleberry Survey at 1337 vrs. a stake a pine brs. S. 37½ E. 7½ vrs. a pine S. 51 W. 9 vrs.;

"Thence South at 467 vrs. a stake in center of the Texas & Pacific R. R. track;

"Thence West with said R. R. at 1387 vrs. a stake in same and place of beginning, at Camps Switch, containing in all one hundred and eighteen acres of land."

The Castleberry land described above is out of tract No. 2 and is north of said right of

way. A general view of the situation is shown on the following plat: preme Court cases. The first directly, and the second in its reasoning, support appellees,

The question to be solved is the construction to be given the Castleberry deed from the description supra, in the light of all the surrounding circumstances. Of such a question it has been said: "Since the language employed in deeds varies so much, precedents are rarely controlling in a concrete case, except as they may furnish general aiding rules." 18 C. J. p. 252.

The general rule for the construction of deeds is stated in 18 C. J. p. 252 in the following language: "While the cardinal rule of construction is that the intention of the parties as drawn from the whole deed must govern, where such intention is uncertain, resort must be had to well settled but subordinate rules of construction to be treated as such and not as rules of positive law, the modern rule being that the intention of the parties when ascertained will prevail over all technical rules of construction."

Two Texas cases are cited by both parties, and we do not think it necessary to look beyond these for precedents, or to unduly prolong this opinion by citations and a discussion of the multitude of out of state authorities upon the subject. The two Texas cases dealing with this subject are Couch v. Railway Co., 99 Tex. 464, 90 S. W. 860, and Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S. W.(2d) 1080, 1086, 85 A. L. R. 391, both Su-

in our opinion. Judge Leddy, in the Rio Bravo Oil Co. Case, refers to the holding in the Couch Case in the following language:

"The case of Couch v. Railway Co., 99 Tex. [464] 467, 90 S. W. 860, is cited to sustain the proposition that the presumption applicable to public highways and streams does not apply in case of a conveyance of land bounded by a railroad right of way. This expression used by Judge Brown is cited as indicative of such holding: 'The right of way of a railroad is not a public highway, in the sense of a public road or street, and the rule of construction which applies to a deed for land bounded by a public highway does not apply in this case so as to make the deed convey land not included in its terms.'

"This language standing alone would seem to sustain plaintiff in error's view, but, when construed in connection with that which immediately follows, there is no such result. Immediately following the language above quoted Judge Brown states: 'At the time the deed from Couch to Norton and McGowen was made Couch owned the land on both sides of the railroad, and after the sale the entire right of way remained in connection with his land south of the railroad.'

"He then continues: '*Under this state of facts* there is no ground for a presumption that Couch intended to convey that portion

which lay between the line described in the deed and the railroad track.' (Italics ours.)

"It is thus made clear that the presumption was not applied in that case by the distinguished jurist who rendered the opinion for the obvious reason that the grantor owned lands on both sides of the railroad. His failure to convey to the center of the railroad right of way did not leave a narrow strip of land disconnected from any other tract. Such strip was as much an appurtenant to the grantor's remaining tract as it was to the tract conveyed. It was as valuable to him as a part and parcel of his remaining tract as it was to the grantee. Evidently Judge Brown declined to apply the presumption because of the recited fact that the grantor, at the time of the conveyance, owned land on both sides of the railroad right of way. There was no other reason for his stating such fact except for the purpose of showing that no basis existed for the application of this presumption. * * *

"The prime object and purpose of such rules is to enable them to ascertain and give effect to the true intention of the parties unless such intention is inconsistent with some settled rule of law. In construing a deed, effect must be given, if possible, to every part of the deed, each clause being considered separately and being governed by the intention of the parties fairly deducible from the provisions of the entire instrument. In other words, the intention must be gathered primarily from a fair consideration of the whole instrument, and the language employed therein, and the construction given it should harmonize with the terms of the deed, including its scope, subject-matter, and purpose."

■ Here, as in the Couch Case, the contention is that a presumption exists that a grantor, conveying land abutting upon a railroad right of way, intends to convey to the center of the right of way. But in this case, as in that, the grantor owned land at the time of his conveyance on both sides of the right of way. Campbell when he conveyed to Castleberry then owned and continued to own thereafter tract No. 1 described above. As determining Campbell's intent the following facts are highly significant: Campbell bought and had conveyed to him on the north side of the track 118 acres; he conveyed to Castleberry only 108, an acreage that could not have included the right of way. The deed to him called for the "center of the Texas & Pacific Railroad track"; the one from him to Castleberry called for a "stake on the north boundary line of the Texas & Pacific Railway right of way." An entirely different set of field notes was used by him in conveying from those in the conveyance to him, evidencing that he had had a survey made subsequent to his purchase which by its description ran to but not upon said right of way.

■ We cannot permit a mere presumption to overcome the intent of the parties as evidenced by the language used in a conveyance.

"In construing an instrument involving the conveyance of land, courts should be concerned more in arriving at and effectuating the true intention of the parties than in enforcing an arbitrary rule of construction based solely upon considerations of public policy." Rio Bravo Oil Co. v. Weed, supra.

To give effect to the presumption that Campbell intended to convey to Castleberry any part of said right of way because the land abutted thereon, in the face of the above facts, would be, it seems, to judicially make a contract for the parties different from that intended.

We do not discuss other contentions made by appellees in support of the trial court's judgment, because it is clear to us that the suit by appellants against appellees for the strip of land within said right of way must fail, because their predecessor in title, J. R. Castleberry, never owned same. Appellants claim only such title as Castleberry acquired to the strip in controversy by the said deed from Campbell.

We are of the opinion that the trial court correctly decided that Campbell never intended to convey, and did not convey to Castleberry, the land in controversy, and its judgment denying to appellants any recovery will be affirmed.

Affirmed.